**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X

**UNITED STATES OF AMERICA**

   - v -

                                                                                           **S1 07 Cr. 699 (HB)**

**DEMI ABRIHAM, a/k/a "300,"**
**PEDRO CABRERA, a/k/a "Pete,"**

                    **Defendants.**
_____X

## MOTION TO DISMISS THE INDICTMENT

   Defendants Demi Abriham and Pedro Cabrera hereby move this Court for an order dismissing the indictment against them. The Defendants set out the following facts in support of the Motion:

   1.   The crimes alleged against the Defendants were manufactured solely by the government, from start to finish.

   2.   The conduct of the government in setting up a robbery of nonexistent cocaine from nonexistent Colombian narcotics traffickers, solely for the purpose of inducing the commission of a crime, was outrageous.

   3.   The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that the Defendants will receive fundamental fairness in a criminal prosecution.

   4.   The outrageous conduct of the government violated the due process rights of the Defendants.

   5.   The Defendants are thus entitled to the dismissal of the prosecution.

For the foregoing reasons, Defendants Demi Abriham and Pedro Cabrera request this Court to dismiss the Indictment.

A Memorandum in Support of Motion to Dismiss the Indictment has been filed together with this Motion and is incorporated into the Motion as if set out herein.

Respectfully submitted,

_____
David Segal, Esq. (DS-5108)
Attorney for Defendant Demi Abriham
30 Vesey Street
New York, NY   10007
Telephone:   (212) 406-9200


_____
Robert Blossner, Esq. (RB-0526)
Attorney for Defendant Pedro Cabrera
30 Vesey Street
New York, NY   10007
Telephone:   (212) 571-0805

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

UNITED STATES OF AMERICA

    - v -

                                                                       S1 07 Cr. 699 (HB)

**DEMI ABRIHAM, a/k/a "300,"**
**PEDRO CABRERA, a/k/a "Pete,"**

             **Defendants.**
_____X

## MEMORANDUM IN SUPPORT OF DEFENDANTS MOTION TO DISMISS THE INDICTMENT

### INTRODUCTION

Defendants Demi Abriham and Pedro Cabrera stand charged with (1) conspiring to commit robbery, in violation of 18 U.S.C. § 1951(b)(1), and (2) conspiring to violate narcotics laws, in violation of 18 U.S.C. § 846. The facts show that the charges against Abriham and Cabrera arise from an alleged crime that never came to fruition and that was completely manufactured by the government from its inception. The government's own summary of the evidence contained in the Complaints against the Defendants shows that the activity that resulted in the indictment of Abriham and Cabrera began when, over a period of several weeks, a government informant convinced Lorenzo Rodriquez ("Flaco") to commit a robbery on a group of other persons who had a large quantity of cocaine. Prior to the contact between the informant and Flaco, Flaco was unaware of the cocaine and had expressed no interest in committing a robbery with the informant. In fact, there was no cocaine or group of persons to be robbed, as the informant's intended target was totally contrived by the imagination of the government.

After the several-week period when the informant recruited Flaco, they eventually met with an undercover officer at a hotel, together with Jose Carrasquillo, a/k/a "Tio," who was brought to the meeting by Flaco. The undercover officer falsely told Flaco and Tio that he was in the business of transporting cocaine for a Colombian group and that he was willing to help Flaco and Tio steal a shipment of cocaine. The next day, Flaco told the informant that he wanted to withdraw from the scheme, but the informant talked him into continuing. Thereafter, the undercover officer drove Flaco to meet a car driven by Tio, and then a car driven by Cabrera joined them. All of the vehicles proceeded to a storage facility, where officers arrested all of the occupants of each car, including Abriham.

## ARGUMENT

**THE PROSECUTION OF THE DEFENDANTS VIOLATES THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.**

It is well settled that the principles of fundamental fairness embodied in the Due Process Clause of the Fifth Amendment to the United States Constitution preclude the government from engaging in actions that are outrageous and "offend 'a sense of justice.'" *Rochin v. California*, 342 U.S. 165, 173 (1952) (quoting *Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936)). More particularly, the Supreme Court has recognized that there may be situations in which government agents go so far in creating a crime for the purpose of arresting its participants that "due process principles would absolutely bar the government from invoking the judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973); *see also Hampton v. United States*, 425 U.S. 484, 492-96 (1976)

2

(Powell, J., concurring) (a court's supervisory power or due process "could support a bar to conviction" where the defendant was predisposed but the government's actions were nevertheless "outrageous" and violated fundamental fairness).  Accordingly, in cases involving  narcotics, courts have held that where the police have supplied the drugs and have recruited both the buyer and the seller, the crime is so manufactured by the government as to violate a sense of justice, thus precluding the prosecution of the crime.

For example, in *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978), the court found that the government's conduct in facilitating the commission of a drug offense was "so overreaching as to bar prosecution" of the defendants.  In *United States v. Twigg*, the government had used a confidential informant to contact one defendant to urge him to engage in the manufacture of methamphetamine.  The informant supplied the bulk of the equipment and materials needed to make the drug.  The second defendant came into the operation as a favor to the first defendant.  Eventually, once the operation had proceeded to produce methamphetamine for over a week, federal agents stepped in and arrested the participants, including the defendants.

The court found that the defendants were precluded from arguing entrapment by the government, since they were found to have been sufficiently predisposed to commit a drug offense.  However, the court focused on the conduct of the government.  Quoting from *United States v. West*, 511 F.2d 1083, 1085 (3d Cir. 1975), the *Twigg* court stated:

> But when the government's own agent has set the accused up in illicit activity by supplying him with narcotics and then introducing him to another government agent as a prospective buyer, the role of government has passed the point of toleration.  Moreover, such conduct does not facilitate discovery or suppression of ongoing illicit traffic in drugs.  It serves no justifying social objective.  Rather, it puts the law enforcement authorities

3

> in the position of creating new crime for the sake of bringing charges against a person they had persuaded to participate in wrongdoing.

588 F.2d at 379. The court further stated:

> We do not believe the Government may involve itself so directly and continuously over such a long period of time in the creation and maintenance of criminal operations, and yet prosecute its collaborators. As pointed out in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 . . . a certain amount of stealth and strategy "are necessary weapons in the arsenal of the police officer." But, although this is not an entrapment case, when the Government permits itself to become enmeshed in criminal activity, from beginning to end, to the extent which appears here, the same underlying objections which render entrapment repugnant to American criminal justice are operative.

*Id.* (quoting *Greene v. United States*, 454 F.2d 783, 787 (9th Cir. 1971)).

Consequently, the court held that the outrageous conduct of the government mandated the reversal of the convictions of the defendants.

Similarly, in *United States v. Lard*, 734 F.2d 1290, 1296-97 (8th Cir. 1984), the court found that the government agents' "overinvolvement in conceiving and contriving the crimes here approached being 'so outrageous that due process principles should bar the government from invoking judicial processes to obtain a conviction.'" (Quoting *Russell*, 411 U.S. at 431-32.) The crimes at issue in *United States v. Lard* occurred when a government agent repeatedly asked the defendant to make and sell a pipe bomb, even though the defendant had showed no interest in making a bomb prior to being contacted and had initially refused the agent's request. The court found that the agent's conduct was not aimed at facilitating the discovery or suppression of ongoing illicit dealings in unregistered firearms but, rather, was aimed at "creating new crimes for the sake of bringing criminal charges." *Id.* at 1297. The court thus concluded:

4

> Concepts of fundamental fairness preclude us from putting our imprimatur on law enforcement overreaching conduct designed to instigate "a criminal act by persons 'otherwise innocent in order to lure them to its commission and to punish them.'" *Russell*, 411 U.S. at 428-29, 93 S.Ct. at 1641, *quoting Sorrells v. United States*, 287 U.S. at 448, 53 S.Ct. at 215.

*Id.*

The question of a government-induced robbery was at issue in *State v. Hohensee*, 650 S.W.2d 268 (Mo. 1982), in which the court held that the government's action in sponsoring the involvement of government agents in the break-in of a building was outrageous and a violation of due process, thus barring the defendant's conviction. The theft in *State v. Hohensee* was the creation of two informants who were operating under a deal by which they were to supply information about crimes in exchange for leniency on charges against them. The informants recruited the defendant, who assisted the informants in breaking into the building. Relying on *Hampton v. United States* and *United States v. Twigg*, the court found that the conviction of the defendant was unconstitutional.

5

For other similar cases, see *United States v West*, 511 F2d 1083 (3d Cir. 1975) (where a government informer supplied heroin to an accused and then knowingly introduced him to another government agent as a prospective buyer of the heroin, the role of the government in the crime had passed the point of toleration, and convictions for the sale of the heroin to the agent could not stand; such conduct did not facilitate discovery or suppression of ongoing drug traffic but, rather, put the government in the position of creating new crime for the sake of charging a person it had persuaded to participate in wrongdoing); *United States v Batres-Santolino*, 521 F. Supp. 744 (N.D. Cal. 1981) (where an informant of the DEA induced several persons to participate in the importation and sale of cocaine supplied by undercover DEA agents, the court granted a motion to dismiss the resulting indictment, holding that the conduct of the informant and the DEA agents constituted a violation of due process; while recognizing that government infiltration of an existing criminal organization is permissible, the court found that, in this case, no such organization existed until the DEA persuaded the defendants to create one); *United States v. Gardner*, 658 F. Supp. 1573 (W.D. Pa. 1987) (conduct of government agent in inducing and persuading defendant over a period of time to commit crime in question with sole motive and intention of overcoming obvious reluctance of defendant to commit crime reached such a demonstrable level of outrageousness as to require dismissal of indictment charging defendant with two counts of unlawful distribution and possession with intent to distribute a quantity of cocaine); *People v. Isaacson*, 44 N.Y.2d 511, 406 N.Y.S.2d 714 (1978) (action of police in enlisting the services of an informant whom they had deceived into thinking was facing a stiff prison sentence, thereby causing him to desperately seek out

any individual whom he could use to satisfy the police thirst for conviction, and in instructing him to make sure that more than one ounce of cocaine was involved in the sale, and in enticing the defendant into New York from Pennsylvania in order to consummate the sale, deprived the defendant of due process); *Metcalf v. State*, 635 So. 2d 11 (Fla. 1994) (conviction of defendant for solicitation to deliver cocaine would be reversed on due process grounds where only drug involved was government manufactured crack cocaine that sheriff's officers used in reverse–sting operation; police conduct was outrageous); *State v Hunter*, 586 So. 2d 319 ( Fla. 1991) (court reversed one defendant's conviction for cocaine trafficking and conspiracy, concluding that the police had engaged in outrageous conduct violating his due process, where the defendant was not engaged in any criminal activity until such activity was created by an informant attempting to meet his quota under an agreement to set up new drug deals in order to receive a substantially reduced sentence for his drug trafficking conviction); and *Commonwealth v. Mathews*, 500 A.2d 853 (Pa. Super. Ct. 1985) (defendants' conviction of attempt to manufacture controlled substance was outrageous and violated due process due to intense police involvement in, and encouragement of, manufacture of methamphetamine; prosecution presented no evidence as to who had originated idea of manufacturing drug, and police assisted in physically bringing property from out of town to manufacture drug in police vehicle).

These cases demonstrate that where the government creates the entire crime and then sets out to induce the defendant to assist in the commission of the crime, the government's conduct has gone beyond what is permissible. Such outrageous conduct violates due process and requires termination of the prosecution.

## CONCLUSION

For the foregoing reasons, Defendants Demi Abriham and Pedro Cabrera request this Court to grant their Motion to Dismiss the Indictment.

Respectfully submitted,


_____
David Segal, Esq. (DS-5108)
Attorney for Defendant Demi Abriham
30 Vesey Street
New York, NY   10007
Telephone:   (212) 406-9200


_____
Robert Blossner, Esq. (RB-0526)
Attorney for Defendant Pedro Cabrera
30 Vesey Street
New York, NY   10007
Telephone:   (212) 571-0805